HOLLAND & KNIGHT LLP
Charles L. Coleman III (65496)
Tara S. Kaushik (230098)
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415) 743-6900
Fax: (415) 743-6910
E-mail: charles.coleman@hklaw.com
         tara.kaushik@hklaw.com

Attorneys for Plaintiff
UNITED ENERGY TRADING, LLC

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED ENERGY TRADING, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>PACIFIC GAS AND ELECTRIC COMPANY, a California corporation,; ALBERT TORRES, an individual; BILL CHEN, an individual; TANISHA ROBINSON, an individual,<br><br>Defendants. | Case No.: **3:15-CV-2383**<br><br>**COMPLAINT FOR:**<br><br>**1. Violation of RICO, 18 U.S.C. § 1961-1968**<br>**2. Respondeat Superior/Agency**<br>**3. Violation of Sherman Act, 15 U.S.C. § 2;**<br>**4. Breach of fiduciary duty**<br>**5. Intentional misrepresentation;**<br>**6. Negligent misrepresentation;**<br>**7. Conversion**<br>**8. Intentional interference with contract;**<br>**9. Intentional interference with prospective business advantage;**<br>**10. Breach of contract; and**<br>**11. Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff United Energy Trading, LLC d/b/a Blue Spruce Energy Services ("UET" or "Plaintiff") respectfully files this Complaint against Defendants Pacific Gas and Electric Company ("PG&E"), Albert Torres, Bill Chen, and Tanisha Robinson for: (1) Violation of RICO, 18 U.S.C. § 1961-1968; (2) Respondeat Superior/Agency; (3) Violation of the Sherman Act § 2, 15 U.S.C. § 2; (4) Breach of fiduciary duty; (5) Intentional misrepresentation; (6) Negligent misrepresentation; (7) Conversion; (8) Intentional interference with contract; (9) Intentional interference with prospective

business advantage; (10) Breach of contract; and (11) Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. In support of these claims, UET respectfully makes the following allegations.

## NATURE OF CASE

1.     This case seeks to remedy PG&E's fraudulent, deceptive, and monopolistic practices in California's deregulated retail natural-gas market.

2.     PG&E is the traditional public utility in Northern California. PG&E currently holds between 70-90% of the natural gas commodity market. UET is a certified "Core Transport Agent," or "CTA," which is a competitive provider of natural gas to California. UET operates in PG&E's service area.

3.     PG&E and UET compete to supply natural gas to the same residents and small businesses. Unless the customer affirmatively chooses a different CTA, the customer returns to PG&E by default at the severance of UET's contract with the customer.

4.     UET has chosen consolidated billing and collections, available as a matter of right to CTAs under PG&E's tariffs. Under this option, PG&E sends one bill to the customer reflecting both its charges and UET's charges; PG&E is responsible for collecting payments and distributing that money to UET. PG&E acts as UET's agent for these important business functions.

5.     PG&E has willfully and knowingly manipulated its agency position and engaged in improper and unlawful billing, collection, and payment practices under which PG&E uses its position as UET's billing and collections agent to effectively misappropriate money from UET, defrauding UET and its customers, and unfairly competing with UET for core natural gas customers.

6.     For example, PG&E receives payments from UET customers and "holds" that money in a PG&E account instead of paying it to UET for its commodity charges.

7.     Similarly, PG&E applies credits from its own services or programs, such as rebates or credits for use of solar panels, to UET's commodity gas charges. In this way, PG&E effectively misappropriates UET's customer charges to offset the money that PG&E owes to customers.

8.     PG&E also inappropriately "reverses" customer charges. A "reversal" should occur only where PG&E terminates service to a customer, either because of non-payment or because the

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

- 2 -

customer terminates PG&E service altogether. Put in perspective of the billing relationship, a reversal signals to UET that PG&E has not and cannot collect on UET's unpaid balances.

9.      However, PG&E is reversing UET customer accounts for which PG&E has in fact received payment. Instead of applying those charges to the UET customer account balance, PG&E is crediting those amounts to its own electric or gas transportation accounts, and then inexplicably reversing the amounts owed to UET.

10.      These actions cause UET substantial harm, both with respect to the amounts withheld and with respect to its relationships with its customers. UET has lost countless customers who were annoyed or upset at UET's collection efforts on fully-paid accounts, but which PG&E falsely informed UET were in arrears.

11.      Further, UET has disconnected or cancelled hundreds of customer accounts for non-payment based on PG&E's false representations to UET, made over the wires in interstate commerce, that the UET customers had not paid their bill for UET's charges.

12.      PG&E has also used its fiduciary position as UET's billing and collections agent to engage in unlawful competition with UET by, among other things, inaccurately informing UET's customers that they need not pay for UET's services and by using its position as UET's billings and collections agent to improperly induce UET's customers to switch their service to PG&E.

13.      PG&E's abuse of its fiduciary relationship with UET as well as its abuse of its market power as a regulated monopoly is knowingly calculated to drive away as many customers from UET as possible back to PG&E and is done with the specific intent to destroy competition in the retail natural gas commodity market in PG&E's service area.

## THE PARTIES

14.      United Energy Trading, LLC d/b/a Blue Spruce Energy Services is a privately-owned provider of retail electricity and natural gas to end-user residential and commercial customers throughout the United States and Canada. UET is headquartered at 225 Union Boulevard, Suite 200, Lakewood, Colorado 80228.

15.      Defendant PG&E is a California corporation with its principal place of business located at 77 Beale Street, San Francisco, California 94105. PG&E is a subsidiary of PG&E

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

- 3 -

Corporation, and is one of the largest regulated investor-owned electric utilities in California. On its website (http://www.pge.com), PG&E represents that its service area covers from Eureka in the north to Bakersfield in the south, and from the Pacific Ocean to the Sierra Nevada. It operates 141,215 circuit miles of electric distribution lines and 18,616 circuit miles of interconnected transmission lines throughout this area. According to its website, PG&E maintains 4.3 million natural gas customer accounts.

16.     PG&E is a regulated monopoly utility within its service area. It is regulated by the California Public Utility Commission ("CPUC").

17.     Defendant Albert Torres is the Vice President of Customer Operations at PG&E and manages, *inter alia*, PG&E's billing, payment processing, and credit activities for its customers. Defendant Bill Chen works at PG&E as its ESP Services Manager and manages PG&E's relationships with CTAs (as well as PG&E's relationship with competitive electricity providers). Defendant Tanisha Robinson works at PG&E as its Supervisor for EDI Operations and ESP Billing; Ms. Robinson manages Optional Consolidated PG&E Billing and the process by which EDI files (described below) are transmitted to UET.

## JURISDICTION & VENUE

18.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of PG&E's violations of the laws of the United States. This Court has supplemental jurisdiction over UET's claims based on California law under 27 U.S.C. § 1367. In addition, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest and costs.

19.     This Court has personal jurisdiction over PG&E because PG&E resides in this State, does business in this State, has engaged in acts or omissions within this State causing injury, and has otherwise established contacts with this State making the exercise of personal jurisdiction proper.

20.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) & (2) because PG&E resides in this District, and a substantial part of the events or omissions giving rise to the action occurred in this District.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

21. In January, 2014, UET filed an adjudicatory proceeding with the CPUC seeking an injunction against certain of PG&E's customer confidentiality practices and a refund on UET's accounts. On November 17, 2014, the Commission enjoined several of PG&E's practices and soon after ordered discovery on the amount of UET's refund. The facts and claims alleged, *infra*, in this Complaint soon came to light, for which the CPUC cannot provide complete relief. UET is seeking an abeyance of its adjudicatory proceeding, and accordingly, UET files this Complaint as is its right under Cal. Public Util. Code § 2106.

## INTRADISTRICT ASSIGNMENT

22. Pursuant to Civil L-R 3.2(c), intradistrict assignment in San Francisco is proper because the unlawful conduct that gives rise to these claims occurred in the City and County of San Francisco.

## GENERAL ALLEGATIONS

23. PG&E has been the regulated monopoly utility in Northern California since 1905. It traditionally provided both electricity and natural gas to all end users—both residential and commercial—in its service area. As a monopoly utility, PG&E is regulated by the California Public Utilities Commission ("CPUC"). The CPUC also determines the rates that PG&E may charge for the energy it provides, including the price it may charge for the commodity of natural gas.

24. According to its website, PG&E has approximately 4.3 million natural gas customer accounts in its service area.

25. In 1991, the state legislature partially deregulated the natural-gas utility industry in California.

26. In connection with this deregulation, the CPUC established a pilot aggregation program which offered residential and small commercial gas customers, called "core" customers, the opportunity to aggregate their gas loads so that they could participate in competitive gas markets and thereby obtain a lower price for natural gas. Because of this program, California residents are free to purchase their commodity gas from either PG&E or from certain private providers, called "Core Transport Agents," or CTAs.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

- 5 -

27.     The stated purpose of the CTA program is to "lower[] CTA customer prices and enable[] [CTAs] to better compete with utilities and weaken monopolies." *See* http:www.cpuc.ca.gov/PUC/energy/Retail_Gas_Markets/.

28.     Although California core gas customers may purchase their natural gas from a non-monopoly CTA, the regulated monopoly utilities, including PG&E, continue to provide natural gas utility service to these customers.

29.     Accordingly, the CTAs compete with PG&E for natural-gas core customers.

30.     CTAs purchase natural gas on the open market and sell the gas directly to end users using PG&E's distribution system. When an end user purchases gas from a CTA instead of PG&E, the utility charges a separate "transportation" charge to the customer. In addition, PG&E typically charges customers for electricity on the same bill.

31.     As another aspect of deregulation, CTAs may elect, as a matter of right, to have their billing consolidated with PG&E's; i.e., both the CTA's and PG&E's charges appear on one statement and the customer pays both with one check (or other method) to PG&E.

32.     Specifically, under PG&E's relevant tariffs, known as its "Gas Rules," CTAs have the option of participating in a billing and payment program called "Optional Consolidated PG&E Billing." If the CTA chooses this billing option, PG&E must calculate the CTA's charges based on the customer's gas usage and apply the proprietary and confidential rate provided by the CTA to PG&E once a month. Under Consolidated PG&E Billing, PG&E "assumes responsibility for the accuracy of the calculation of CTA's charges," but not for the accuracy of the CTA's rate per therm of natural gas provided. Gas Rule No. 23.C.1.c(1)(b)(iv).

33.     PG&E operates Consolidated Billing as a unit separate from its primary business activities. Tanisha Robinson, for example, supervises two employees whose responsibility includes little else beyond sending the electronic files referenced in Paragraphs 52, 64, and 74 and otherwise maintaining the Consolidated Billing structure imposed by Gas Rule 23. William Chen similarly devotes all of his work time to managing either Consolidated Billing or to managing customer care issues (e.g., switching customers' gas commodity service either to or from a CTA) associated with Consolidated Billing.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

- 6 -

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

34. Under Consolidated Billing, PG&E also acts as the CTA's collections agent. As such, PG&E is required to pay to the CTA the amounts paid to PG&E for the CTA's gas commodity charges after it receives that money from the customer. Gas Rule 23.C.1.c(4)(a). PG&E is required to transfer the received payments to the CTA either 17 days after the bill was rendered to the customer or the next business day after the payment is received by the utility. *Id.*

35. When transferring payments, PG&E is required to specify the amount paid by each service account. *Id.* If there are any amounts resulting from returned payments (e.g., the customer's check "bounces") or returned payment charges, PG&E may debit those amounts to the CTA on the billing statement for the following month. *Id.* The tariffs permit no other debits or set-offs.

36. PG&E is responsible for collecting the unpaid balance of all charges from customers, sending notices informing customers of unpaid balances, and taking the appropriate actions to recover any unpaid amounts owed to the CTA. Gas Rule 23.C.1.c(5)(a).

37. UET is a qualified CTA operating in PG&E's service area. UET signed a Core Gas Aggregation Service Agreement with PG&E in September, 2010, and began serving customers in Northern California shortly thereafter.

38. UET supplies natural gas to its customers by transporting it across interstate pipelines for delivery to PG&E's Citygate. On receipt of UET's gas, PG&E charges UET both for storing it and for transporting it to the customer based on "take or pay" terms, the amount of which is determined by reference to UET's overall volume calculated on both a monthly and yearly basis.

39. UET spent significant time and money marketing for customers. These activities included engaging in direct-mail marketing, door-to-door marketing, internet and print campaigns, and other activities.

40. As a result of these marketing efforts, UET grew its customer base in PG&E's service area to approximately 60,000 core customers in 2014.

41. UET participates in the Consolidated PG&E Billing Option, making PG&E its billing and collections agent for all of UET's core customers in PG&E's service area. UET pays PG&E approximately $40,000 per month for this service.

COMPLAINT

42.     Because PG&E has all of UET's customer information and also is responsible for calculating the amount due, billing those amounts, collecting the money, and providing it to UET, the utility exercises a tremendous amount of control over UET's customer base.

**PG&E's Payment Withholding Scheme**

43.     After PG&E receives the customer's payment, it unilaterally divides the payments among the various accounts contained in the bill, including UET's charges for natural gas, PG&E's transportation charge, and PG&E's electricity charges (if any). PG&E takes the position that this process is proprietary and will not share information about how it divides the payments received. In its role as UET's billing and collections agent, PG&E has engaged in improper and unlawful activities which have violated UET's rights and caused UET damages and irreparable harm in a number of ways.

44.     Specifically, for some of UET's core customers, PG&E simply does not remit to UET funds it has received for UET's gas commodity charges. As of the date of this filing, UET has not received full payment from PG&E on hundreds of UET customer accounts. According to UET's records, as of at least December, 2014, it is owed over $1.7 million from its customers with aging accounts past due by sixty days or more.

45.     To track the billing process, PG&E regularly provides UET with an Electronic Data Interchange ("EDI") file or a file transfer link containing information about each account for which there is activity.  For easy reference, UET in this Complaint refers to both types of information packets as "EDI files."

46.     The EDI file contains information about the status of UET's customer accounts. Specifically, in the EDI file, PG&E makes several representations to UET about its customers, including:

a.     UET customers to whom PG&E has sent a bill containing UET's commodity gas charges and the amount of UET's charges that PG&E will collect;

b.     UET customers who have paid UET's previous charges and the amount PG&E has apportioned to UET;

c.     The balance of the UET customer's account for UET's commodity gas charges;

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

- 8 -

d.     The identity of UET customers who have not fully paid UET's gas charges; and/or

e.     The number and identity of UET customers who have had charges "reversed" by PG&E.

47.     PG&E's EDI files frequently contain intentionally false representations to UET about the status of its customer accounts, including representations that certain customers have not paid UET's charges, when those customers actually are current.

48.     PG&E sends the EDI file using interstate wires; that is, PG&E typically attaches the file or a link to a file-share site to an email that is sent over the internet from California to Lakewood, Colorado.

49.     UET relies on the data and representations of PG&E contained in the EDI file. When it does not receive payments from PG&E for its customers, UET may contact the customer regarding the delinquency.

50.     Often, however, the customers state that they have fully paid their power bills to PG&E, including all of UET's charges.

51.     For these customers, PG&E's EDI file, sent over the internet from California to Lakewood, Colorado, and which shows that the customer has not made the required payments for UET's commodity gas charges, contains intentionally false and misleading information and also fails to disclose material information about UET's customer accounts.

52.     For example, PG&E has used the internet to falsely report the status of the following accounts to UET:

a.     On or about June 2, 2014, PG&E received payment from Customer William S. (Account ID *558). PG&E recorded this payment as a "negative" bill to its own gas transportation account. On or about June 5, 2014, by file transfer using interstate wire, PG&E failed to notify UET of the full payment and instead carried the funds as a credit in PG&E's gas transportation account. On or about July 7, 2014, PG&E received a payment from Customer William S., and PG&E again masked this payment as a "negative" bill to its own gas transportation account. On or about July 7, 2014, by EDI file transfer using interstate wires, PG&E failed to notify UET of the full payment and instead carried the

       

funds as a credit in PG&E's gas transportation account. PG&E continued to record payments as negative balances in its gas transportation account in September, October, and November 2014, and in each month, sending UET EDI files (e.g., on or about November 7, 2014) containing false information. PG&E's various statements to UET were false because PG&E had in fact received payment from the customer but used accounting methods to hide the payments to make it appear as though the customer had not paid. On information and belief, PG&E has continued to receive payments from the customer but has not remitted these to UET. As a result, all subsequent monthly and daily EDI payment files also contain false information.

b.      On or about June 5, 2014, PG&E received payment from Customer Irene M. (Account ID *845). On or about June 9, 2014, by EDI file transfer using interstate wires, PG&E failed to notify UET of the full payment and instead credited the full payment to PG&E's gas transportation account.  By EDI file transmitted on or about September 17, 2014, PG&E notified UET that it had billed the customer for UET's services, when in fact that did not occur. On or about September 30, 2014, PG&E received payment from the customer. Nevertheless, on or about October 6, 2014, PG&E transmitted a payment file that did not inform UET of the customer's payment and instead credited the full payment to PG&E's gas transportation account. PG&E's statements to UET were false because PG&E, in the first place, had failed to bill the Customer but told UET that it had; and, in the second place, received payment from Customer Irene M. but used accounting methods to hide the payments to make it appear that the customer had not paid. On information and belief, PG&E has continued to receive payments from the customer but has not remitted these to UET. As a result, any subsequent EDI payment files—approximately 4 monthly communications—also contain false information.

c.      On or about May 28, 2014, PG&E received payment from Customer Teresa D. (Account ID *395). On or about May 28, 2014, by EDI file transfer using interstate wires, PG&E transmitted a payment file that did not inform UET of the customer's payment and instead credited the full payment to PG&E's accounts. On or about September 29, 2014,

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

COMPLAINT                                                      CASE NO.: 3:15-CV-2383

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

PG&E received another payment from Customer Teresa D. On or about September 29, 2014, by EDI file transfer using interstate wires, transmitted a payment file by did not inform UET of the customer's payment and instead credited the full payment to PG&E's accounts. PG&E's statements to UET were false because they had in fact received payments from Customer Teresa D., but used accounting methods to hide the payments to make it appear that the customer had not paid. On information and belief, PG&E has continued to receive payments from the customer but has not remitted these to UET. As a result, any subsequent, monthly EDI payment files also contain false information.

53.     UET has cancelled hundreds of its customer accounts for non-payment based on what may be false information about the status of payments received from PG&E.

54.     Many of these cancelled accounts had fully paid for the natural gas provided by UET, but PG&E did not provide those funds to UET, creating the impression that the customers had not paid the appropriate charges when, in fact, the customers had remitted either the full or partial amount due for UET's charges to PG&E.

55.     UET has otherwise continued to supply gas to PG&E for its active customers—including those detailed in Paragraphs 52a-c, above—not knowing that PG&E's accounting methods either failed to properly bill UET's customers for the gas or failed to properly credit to UET payments received from such customers. In effect, PG&E's Payment Withholding Scheme dupes UET into supplying gas to PG&E, which PG&E holds and uses knowing that its accounting methods ensure that UET will not be paid in full for such gas.

56.     PG&E's Payment Withholding Scheme additionally benefits PG&E because UET must pay PG&E transportation and storage fees, which are based on the volume of gas UET provides for its customers.

57.     In other words, PG&E has engaged in a pattern and practice of intentionally withholding money from UET that PG&E received from UET customers for natural gas delivered by UET. PG&E benefits from its deception regardless of the action taken by UET. If UET cancels the customers' accounts for non-payment, these customers revert back to PG&E for their natural-gas service. If UET does not cancel, PG&E continues to receive UET's gas without paying for it

1    and continues to charge UET to transport and store the gas.

2         58.    Citing its customer confidentiality policies, PG&E refuses to provide information

3    relative to the payment status of UET's customers. That is, PG&E only tell UET the amount of

4    money PG&E has elected to apportion to UET. UET must trouble the customer for any other

5    information, such as the amount paid to PG&E or how PG&E has credited the customer's balance.

6         59.    In other words, having kept money owing to UET and perpetuated a scheme to

7    engender cancellations from UET (for alleged non-payment) or to appropriate free gas and

8    storage/transportation fees, PG&E affirmatively prevents UET from uncovering the scheme by

9    citing "customer privacy" concerns.

10   **PG&E's Energy Credit Scheme**

11        60.    PG&E engages in a pattern and practice of offsetting UET customers' charges for

12   natural gas delivered to UET's customers with credits from non-UET related charges.

13        61.    Neither the parties' contract nor the Gas Rules permit PG&E to offset PG&E's

14   customer credit structure with amounts owed to UET.

15        62.    For example, PG&E offers its customers certain subsidies and credits for obtaining

16   some of their electricity through solar panels and the like.  PG&E improperly applies these credits

17   to UET's gas commodities charges, such that the customer sees either that no payment is due for the

18   month or that an amount is due that will not cover UET's charges.

19        63.    In other words, PG&E accepts gas from UET for these customers and delivers gas to

20   these customers on UET's behalf, but informs the customer that s/he does not need to pay due to a

21   PG&E energy credit. Effectively, PG&E defrauds UET of its gas and uses it to subsidize its

22   customer credit programs.

23        64.    Some specific instances of this conduct include:

24        a.      By EDI file transmitted on or about October 30, 2013, PG&E notified UET that it

25   had billed Customer Guadalupe M. (Account ID *317) for UET's services. By EDI files

26   transmitted on or about May 2, June 2, July 2, 2013 and then continuing on a monthly basis

27   throughout 2013, and on or about January 31, March 4, and April 2, 2014 and continuing on

28   a monthly basis throughout 2014—for a total of 20 such occurrences—PG&E similarly

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

- 12 -

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

notified UET that it had billed Customer Guadalupe M. for UET's gas commodity services. In fact, in each instance, PG&E either failed to bill the customer or used an energy credit on the bill to "mask" the amount owed to UET, causing the customer not to pay UET's charges. PG&E continued to accept gas from UET, transported over interstate pipeline, and used the gas for this customer to determine storage and transport quantities, for which PG&E charged UET.

b.     By EDI file transmitted on or about May 19, 2013, PG&E notified UET that it had billed Customer S. R. (Account ID *479) for UET's services, when in fact, PG&E used a credit on the bill to "mask" the amount owed to UET, causing the customer not to pay UET's charges. By EDI file transmitted on or about February 19, 2014, PG&E again notified UET that it had billed Customer S. R. for UET's services, but PG&E had again used a credit on the bill to "mask" the amount owed to UET, causing the customer not to pay UET's charges. By EDI file transmitted on or about August 18, 2014, PG&E again notified UET that it had billed Customer S. R. for UET's services, but PG&E had again used a credit on the bill to "mask" the amount owed to UET, causing the customer not to pay UET's charges. PG&E's statements were false because PG&E had applied a credit to the customer's entire bill, including to UET's gas commodity charges; meaning, PG&E used UET's gas commodity charges to offset the cost of its credit program. PG&E's statements were also false because PG&E had informed UET that it had billed the customer when, in fact, it had affirmatively told the customer *not* to pay UET's charges.  By EDI files transmitted on May 19, 2013, February 26, 2014 and August 24, 2014, PG&E notified UET that the customer was not paying UET's charges. PG&E continued to accept gas from UET, transported over interstate pipeline, and used the gas for this customer to determine storage and transport quantities, for which PG&E charged UET.

c.     By EDI file transmitted on or about March 28, 2013, PG&E notified UET that it had billed Customer Castle Park LLC (Account ID *424) for UET's services, when in fact, PG&E used a credit on the bill to "mask" the amount owed to UET, causing the customer not to pay UET's charges. By EDI file transmitted on or about May 28, 2013, PG&E again

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

notified UET that it had billed Customer Castle Park for UET's services, but PG&E had again used a credit on the bill to "mask" the amount owed to UET, causing the customer not to pay UET's charges.  By EDI file transmitted on or about February 28, 2014, PG&E again notified UET that it had billed Customer Castle Park for UET's services, but PG&E had again used a credit on the bill to "mask" the amount owed to UET, causing the customer not to pay UET's charges. In each of the foregoing instances and continuing on a monthly basis throughout 2014 PG&E used a credit on the bill to "mask" the amount owed to UET, causing the customer not to pay UET's charges. PG&E's statements were false because PG&E had applied a credit to the customer's entire bill, including to UET's gas commodity charges; meaning, PG&E used UET's gas commodity charges to offset the cost of its credit program. PG&E's statements were also false because PG&E had informed UET that it had billed the customer when, in fact, it had affirmatively told the customer ***not*** to pay UET's charges.  By EDI files transmitted on April 4, 2013, June 5, 2013 and March 6, 2014, PG&E notified UET that the customer was not paying UET's charges. PG&E continued to accept gas from UET, transported over interstate pipeline, and used the gas for this customer to determine storage and transport quantities, for which PG&E charged UET.

d.      In addition, as alternative factual allegations, each of the incidents in Paragraph 52a-c may reflect instances of the Energy Credit Scheme. That is, with each "negative" bill PG&E applied an energy credit which "masked" the amount owed to UET, affirmatively indicating to the customer that s/he need not pay some or all of UET's gas commodity charges.

65.     In each case set forth above, PG&E's EDI file informed UET that it billed and was attempting to collect UET's gas commodity charges when, in fact, PG&E had applied a credit such that the customer believed it did not owe UET anything. Further, PG&E's EDI file informed UET that the customer was not paying UET's gas commodity charges when, in fact, PG&E had induced the unwitting customer into not paying UET.

66.     UET has cancelled hundreds of its customer accounts for non-payment based on what may be false information about the status of payments received from PG&E.

- 14 -

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

67.     UET has otherwise continued to supply gas to PG&E for its active customers—including those detailed in Paragraphs 64a-c, above—not knowing that PG&E had not only failed to bill the customer but also affirmatively told the customer that s/he need not pay UET for its services. In effect, PG&E's Energy Credit Scheme dupes UET into supplying gas to PG&E, which PG&E holds and uses knowing that its accounting methods ensure that UET will not be paid for such gas and reducing the amount of credit that PG&E owes to the customer.

68.     PG&E's Energy Credit Scheme additionally benefits PG&E because UET must pay PG&E transportation and storage fees, which are based on the volume of gas UET provides for its customers.

69.     In other words, PG&E has engaged in a pattern and practice of intentionally using UET's gas and gas commodity charges to underwrite PG&E's energy credit program. PG&E's Energy Credit Scheme also caused UET to cancel customers (for alleged non-payment). These customers then default to PG&E's gas commodity service.

70.     Citing its customer confidentiality policies, PG&E refuses to provide information relative to the payment status of UET's customers. That is, PG&E will only tell UET the amount of money PG&E has elected to apportion to UET. UET must trouble the customer for any other information, such as the amount paid to PG&E or how PG&E has credited the customer's balance.

71.     In other words, having kept money owing to UET and perpetuated a scheme to engender either cancellations from UET (for alleged non-payment) or free gas from UET (when UET continues to supply the customer), PG&E affirmatively prevents UET from uncovering the scheme by citing "customer privacy" concerns.

**The Reversal Scheme**

72.     PG&E has engaged in a pattern and practice of withholding amounts due to UET where PG&E claims that the funds are due for "reversals."

73.     PG&E's EDI files contain information showing which accounts have "reversed."

74.     Some specific examples of this include:

a.     By EDI file transmitted on or about August 27, 2014, PG&E reversed Customer Bruno P. (Account No. *675), signaling to UET that the customer was not paying

1   PG&E. This information was false because, at that point, PG&E had been paid in

2   full and therefore PG&E could not shut-off or reverse the customer.

3      b.  By EDI file transmitted on or about September 19, 2014, PG&E informed UET that

4          PG&E had reversed Customer S.R. (Account No. *182) signaling to UET that the

5          customer was not paying PG&E. This information was false because, at that point,

6          PG&E had been paid in full and therefore PG&E could not shut-off or reverse the

7          customer.

8      c.  By EDI file sent on or about January 30, 2013, PG&E informed UET that customer

9          Guadalupe M. (Account ID *317) paid $639.04 and $511.02 for UET's services.

10         That same day, PG&E reversed these amounts. By EDI file sent on or about

11         February 7, 2013, PG&E informed UET that the customer had again paid $639.04

12         and $511.02 as well $198.63. That same day, PG&E again reversed those sums.

13         By EDI file sent on or about March 11, 2013, PG&E informed UET that the

14         customer again paid $511.02 and $198.63; again, PG&E reversed this sum that same

15         day. On April 9, 2013, PG&E again allocated and reversed $198.63. This

16         information was false because the customer has paid PG&E yet PG&E refused to

17         remit that amount to UET.

18     d.  By EDI file sent on or about September 25, 2013, PG&E informed UET that

19         Customer S.R. (Account ID *479) paid $655.42, $348.63, $320.73, $282.14,  and

20         $269.26 for UET's services. That same day, PG&E reversed these amounts. By EDI

21         file sent on or about October 24, 2013, PG&E again informed UET that the customer

22         had again paid $655.42, $348.63, $320.73, $282.14, and $269.26. That same day,

23         PG&E again reversed those sums. By EDI file sent on or about November 25, 2013,

24         PG&E informed UET that the customer again paid $655.42, $348.63, $320.73,

25         $282.14, and $269.26; again, PG&E reversed these sums that same day. On

26         December 26, 2013, PG&E again allocated and reversed all of these amounts. This

27         information was false because the customer has paid PG&E yet PG&E refused to

28         remit that amount to UET.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

COMPLAINT                                                    CASE NO.: 3:15-CV-2383

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

75.     In January 2015, PG&E permanently "reversed" thousands of UET customers, representing about $140,000 in reversals. In February 2015, PG&E "reversed" another $40,000.00 worth of customers.

76.     Similar to some of the examples in Paragraph 74.a-d, PG&E backdated many of these reversals, as though the reversal had occurred months beforehand.

77.     According to the EDI files sent by PG&E in September, October, November, and December 2014, many of the customers reversed by PG&E had made payments to UET in the prior months. PG&E recouped the amounts paid to UET by off-setting money owed to UET in February 2015 and March 2015.

78.     PG&E has provided no explanation for this practice, and neither the parties' contract nor the Gas Rules permit it.

79.     PG&E's EDI files showing a reversal falsely informed UET that these customers had "reversed," when in fact, they had not.

80.     Alternatively, PG&E's EDI showing a payment were false because they stated that the customer had paid UET when, in fact, the customer had not.

81.     PG&E's actions have damaged UET by eroding its customer base, denying it current and future revenue. PG&E's actions have also damaged UET by disrupting its cash flow, which impacts nearly every aspect of its business. For example, UET cannot accurately project revenue or manage its credit facilities when PG&E mercurially reverses customers or offsets payments.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Violation of the Racketeer and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968)**

82.     UET incorporates herein by reference all allegations set forth in Paragraphs 1 through 81 of this Complaint.

### FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS

### RICO COUNT I

### (Violation of RICO § 1962(c))

83.     The allegations of paragraphs 1 through 82 are incorporated herein by reference.

- 17 -

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

84.     This Count is against Defendants Torres, Robinson, and Chen (the "Count I Defendants").

85.     Consolidated Billing is an enterprise engaged in and whose activities affect interstate commerce.  The Count I Defendants engaged in the predicate act of wire fraud by way of the Payment Withholding Scheme, the Energy Credit Scheme and the Reversal Scheme in furtherance of the Consolidated Billing enterprise.

86.     The Count I Defendants are employed by or associate with the enterprise.

87.     The Count I Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff.

88.     Specifically, Defendant Robinson directs her department to provide UET with the Electronic Data Interchange ("EDI") files containing the false information as detailed in Paragraphs 52, 64 and 74. Defendant Robinson directs her department to transmit this false information through interstate wires (i.e., over the internet and telephone network) to UET in Lakewood, Colorado. Defendant Robinson further directs her department to deceive UET when it inquires about these schemes, such as Robinson's subordinate, David Reyes, did in September 2013.

89.     Defendant Torres oversees and directs the employees in Customer Operations to withhold payments from UET, as described *supra* in Paragraphs 52, 64 and 74. Defendant Torres similarly directs the employees in Customer Operations to apply PG&E energy credit programs (e.g., for solar panels, etc.) to UET's charges, as described *supra* in Paragraph 64. Defendant Torres directs the employees in Customer Operations to apply reversals in the manner described in Paragraph 74. Finally, Defendant Torres directs the employees in Customer Operations to use customer care calls originating from the Payment Withholding Scheme and the Energy Credit Scheme to inform UET customers that they do not and will never pay less with UET's services and to convince the customer to drop UET.

90.     Defendant Chen oversees and manages the CTA program. Defendant Chen manages and implements the Payment Withholding Scheme, the Energy Credit Scheme, and the Reversal Scheme. Specifically, Defendant Chen directs and coordinates these schemes between Defendant

- 18 -

Robinson and Defendant Torres.

91.     The Payment Withholding Scheme, the Energy Credit Scheme, and the Reversal Scheme constitute wire fraud in violation of 18 U.S.C. § 1343. Specifically, each of these Schemes concern the transmission of false information in the EDI files, with the intent of either withholding payments from UET, defrauding UET of its gas commodity to subsidize PG&E's customer credit program, or reducing UET's customer base.

92.     The Payment Withholding Scheme, the Energy Credit Scheme, and the Reversal Scheme involve use of interstate wires (i.e., the internet) to transmit the EDI files to UET.

93.     The Count I Defendants have evidenced specific intent to defraud UET because the practical effect of the Schemes is that the customer defaults to PG&E's gas commodity service. The Count I Defendants have similarly evidenced specific intent to defraud UET because another practical effect of the Schemes is to withhold money from UET or to subsidize PG&E's other business units. Finally, the Count I Defendants evidence specific intent to defraud UET since they have undertaken efforts to conceal the Schemes.

94.     The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

95.     This pattern poses the threat of continuing. The first predicate act of the Reversal Scheme, for example, dates back to 2013 and continues through December 2014. The Count I Defendants deploy the Payment Withholding Scheme and the Energy Credit Scheme each month with UET's customers via transmission of the false EDI files. Further, in September, 2014, the Count I Defendants informed UET that the Schemes constitute PG&E's regular manner of doing business.

96.     As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), UET has been injured in its business and property in that the Count I Defendants defraud UET of money or gas commodities and have eroded UET's customer base.

97.     WHEREFORE, Plaintiff requests that this Court enter judgment against the Count I Defendant(s) as follows:

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

- 19 -

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

a.  Actual damages in an amount to be proven at trial, but estimated to be in the millions of dollars;

b.  Treble damages and attorneys' fees and costs as provided in 18 U.S.C. § 1964(c);

c.  Any other relief the Court determines is appropriate.

## RICO COUNT II

### (Violation of RICO § 1962(d))

98.  The allegations of paragraphs 1 through 97 are incorporated herein by reference.

99.  This Count is against Defendants Torres, Robinson, and Chen (the "Count II Defendant(s)").

100.  As set forth above, the Count II Defendants agreed and conspired to violate 18 U.S.C. §1962(c).

101.  The Count II Defendants have intentionally conspired and agreed to directly and indirectly conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

102.  The Count II Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

103.  As a direct and proximate result of the Count II Defendants' conspiracy to commit racketeering activities and violations of 18 U.S.C. § 1962(c), UET has been injured in its business and property in that the Count II Defendants defrauded UET of money or gas commodities and have eroded UET's customer base.

104.  WHEREFORE, Plaintiff requests that this Court enter judgment against the Count II Defendants as follows.

a.  Actual damages in an amount to be proven at trial, but expected to be in the millions of dollars;

b.  Treble damages and attorneys' fees and costs as provided in 18 U.S.C. § 1964(c);

c.  Any other relief the Court determines is appropriate.

- 20 -

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

## SECOND CAUSE OF ACTION

### (Respondeat Superior/Agency)

105.     UET incorporates herein by reference all allegations set forth in Paragraphs 1 through 104 of this Complaint.

106.     PG&E is distinct from the Consolidated Billing program operated by Robinson, Chen, and Torres.

107.     PG&E has benefited from its employees' and agents' racketeering activities.

108.     The racketeering activities were committed as an outgrowth of, inherent to the working environment, or typical of or broadly incidental to Robinson's, Chen's, and Torres' employment with PG&E.

109.     PG&E exercised control over Robinson's, Chen's, and Torres' racketeering activities.

110.     PG&E is vicariously liable for the racketeering activities committed by Robinson, Chen, and Torres.

111.     WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

    a.  Actual damages in an amount to be proven at trial, but expected to be in the millions
        of dollars;

    b.  Treble damages and attorneys' fees and costs as provided in 18 U.S.C. § 1964(c);

    c.  Any other relief the Court determines is appropriate.

### THIRD CAUSE OF ACTION

### (Attempt to Monopolize in Violation of the Sherman Act § 2, 15 U.S.C. § 2)

112.     UET incorporates herein by reference all allegations set forth in Paragraphs 1 through 111 of this Complaint.

113.     Through its above-described actions, PG&E has the specific intention to destroy competition in the deregulated retail natural gas market in its service area by forcing out CTAs through its market power and abuse of its fiduciary relationship as billing and collections agent for UET and the other CTAs that have elected to use Consolidated PG&E Billing.

- 21 -

114.     Specifically, PG&E has market power because it is the default regulated monopoly utility for natural gas. If a customer cancels UET's or another CTAs' services, those customers by default become PG&E customers if they wish to purchase natural gas in PG&E's service area.

115.     In addition, PG&E has market power because it controls all billing and collection activities for UET (and many other CTAs) which have chosen to use PG&E Consolidated Billing. Although it charges UET a fee for these services, it refuses to disclose its payment allocation criteria or data to UET so that UET can accurately determine whether its customers have paid their bills.

116.     PG&E has engaged in predatory and anticompetitive conduct directed to accomplishing its unlawful purpose of obtaining a full-blown monopoly in the retail natural gas market in its service area.

117.     Because of its market power and its status as both the default natural gas provider as well as its fiduciary agency relationship with UET and its access to information about UET's customer accounts, PG&E's attempt to monopolize the retail natural gas commodity market in its service area poses a dangerous possibility of succeeding by PG&E obtaining a significant amount of market power and by substantially restraining trade.

118.     UET has suffered antitrust injury resulting from PG&E's predatory and anticompetitive conduct. Specifically, as a direct result of PG&E's fraudulent billing practices and market power in the retail natural gas commodity supply market, UET has lost customers and market share and has suffered lost profits, opportunity costs, and other damages.

119.     PG&E's acts have resulted in a reduction in competition in the retail natural gas commodity market, the opposite of the purpose of the CTA program and have had an anticompetitive effect across the entire retail natural gas commodity market.

120.     WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

a.     Actual damages in an amount to be proven at trial, but expected to be in the millions of dollars;

b.     Treble damages and attorneys' fees and costs as provided in 15 U.S.C. § 15;

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

- 22 -

COMPLAINT

CASE NO.: 3:15-CV-2383

c.    Any other relief the Court determines is appropriate.

**FOURTH CAUSE OF ACTION**

**(Breach of Fiduciary Duty)**

121.    UET incorporates herein by reference all allegations set forth in Paragraphs 1 through 120 of this Complaint.

122.    As set forth above, because UET has selected the option of Consolidated PG&E Billing, PG&E acts as UET's billing and collections agent for all of UET's customers in PG&E's service area.

123.    Specifically, PG&E calculates the amounts owed by UET's customers for natural gas, sends a bill containing UET's charges to UET's customers, collects payments from UET's customers, and remits (or is supposed to remit) those amounts to UET.

124.    Under this arrangement, PG&E represents UET with respect to billing and collection issues to UET's customers and is entrusted with the duty to receive and disburse UET's money and to keep accurate records of these transactions. Because they are UET's customers, UET has a right to control and supervise PG&E's actions with respect to UET's billing and collections activities.

125.    Accordingly, PG&E is UET's agent under Cal. Civ. Code § 2295, and owes UET a fiduciary duty of loyalty.

126.    PG&E has retained moneys that it collected from UET's customers for its own benefit and has failed and refused to turn those amounts over to UET. This is a breach of PG&E's duty of loyalty to UET.

127.    In addition, PG&E has used its special relationship of trust as UET's billing and collections agent as well as its position as the default monopoly natural gas provider to improperly compete with UET, including making false representations to UET about the status of its customer accounts and also encouraging UET's customers to cancel UET's services so that the customer will revert back to PG&E.

128.    UET has been damaged by PG&E's breach of its fiduciary duty to UET, including amounts that PG&E has wrongfully withheld from UET and customers terminated without reason due to PG&E's fraudulent representations to UET.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

- 23 -

129. PG&E's breach of its duty of loyalty and fraud were done intentionally and with malice designed to injure UET. Specifically, as set forth above in Paragraphs 43 through 81, PG&E made repeated false statements to UET about the amounts owed and paid by UET's customers, and wrongfully allocated UET customer payments to PG&E's own charges.

130. PG&E's breach of its duty of loyalty and fraud were made with the advance knowledge and authorization of William H. Chen, the manager of PG&E's Account Services group for core transport agents.

131. WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

a. Actual damages in an amount to be proven at trial, but expected to be in the millions of dollars;

b. Exemplary and punitive damages as permitted by law;

c. Its attorneys' fees and costs incurred as permitted by law;

d. Any other relief the Court deems appropriate.

### FIFTH CAUSE OF ACTION

### (Intentional Misrepresentation)

132. UET incorporates herein by reference all allegations set forth in Paragraphs 1 through 131 of this Complaint.

133. PG&E made repeated, intentionally false statements to UET every time that PG&E used the wires to transmit information about UET's customer accounts which reflected that UET's customers had not paid for all of UET's charges, but where in fact the customer had either fully paid for UET's charges of where PG&E told the customer not to pay UET's charges.

134. These false statements were made as set forth in Paragraphs 52, 64, and 74 above and included affirmative false statements as to whether a customer had paid for UET's charges, as well as the intentional concealment of the fact that the customer had, in fact, paid UET's energy charges, but that PG&E retained those monies and applied them to its own customer accounts.

135. PG&E intended that UET rely on PG&E's false statements and intentional concealment. UET justifiably relied on PG&E's false statements about its customers by sending

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

- 24 -

COMPLAINT

CASE NO.: 3:15-CV-2383

1   disconnection notices to these customers when, in fact, the customer's UET charges were fully paid

2   to PG&E.

3       136.    PG&E's intentional false statements have caused UET damages, including lost

4   revenues and income unlawfully withheld by PG&E, lost customers, lost market share, out of

5   pocket costs associated with trying to collect customer accounts which PG&E falsely represented

6   were not paid, and costs associated with trying to repair customer relationships for customers which

7   UET mistakenly attempted to collect from when in fact the customer had fully paid all of UET's

8   charges but PG&E had wrongfully withheld those amounts from UET. Through its actions, PG&E

9   intended to cause UET injury. Further, PG&E carried on its actions with a willful and conscious

10  disregard of the rights of UET and UET's customers.

11      137.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as

12  follows:

13      a.      Damages in an amount to be proven at trial, but estimated to be in the millions of

14  dollars;

15      b.      Exemplary and punitive damages under Cal. Civ. Code § 3294;

16      c.      Its attorneys' fees and costs incurred as permitted by law;

17      d.      Any other relief the Court deems appropriate.

18                          **SIXTH CAUSE OF ACTION**

19                          **(Negligent Misrepresentation)**

20      138.    UET incorporates herein by reference all allegations set forth in Paragraphs 1

21  through 137 of this Complaint.

22      139.    PG&E made repeated false statements to UET every time that PG&E used the wires

23  to transmit information about UET's customer accounts which reflected that UET's customers had

24  not paid for all of UET's charges, but where in fact the customer had fully paid for UET's charges

25  but PG&E intentionally allocated those amounts to PG&E's portions of the customer's bill. These

26  misrepresentations were material and were made without PG&E having reasonable grounds for

27  believing the misrepresentations to be true.

28      140.    These misrepresentations were made as set forth in Paragraphs 1 through 97 above

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

- 25 -

COMPLAINT                                              CASE NO.: 3:15-CV-2383

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

1  and included affirmative false statements as to whether a customer had paid for UET's charges, as

2  well as the intentional concealment of the fact that the customer had, in fact, paid UET's energy

3  charges, but that PG&E retained those monies and applied them to its own customer accounts.

4      141.    PG&E intended that UET rely on PG&E's misrepresentations. UET justifiably relied

5  on PG&E's misrepresentations about its customers by disconnecting its customers when, in fact, the

6  customer's UET charges were fully paid to PG&E.

7      142.    PG&E's misrepresentations described above have caused UET damages, including

8  lost revenues and income unlawfully withheld by PG&E, lost customers, lost market share, out of

9  pocket costs associated with trying to collect customer accounts which PG&E falsely represented

10  were not paid, and costs associated with trying to repair customer relationships for customers which

11  UET mistakenly attempted to collect from when in fact the customer had fully paid all of UET's

12  charges but PG&E had wrongfully withheld those amounts from UET.

13      143.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as

14  follows:

15      a.      Actual damages in an amount to be proven at trial, but expected to be in the millions

16  of dollars;

17      b.      Exemplary and punitive damages under Cal. Civ. Code § 3294;

18      c.      Its attorneys' fees and costs incurred as permitted by law;

19      d.      Any other relief the Court deems appropriate.

**SEVENTH CAUSE OF ACTION**

**(Conversion)**

22      144.    UET incorporates herein by reference the allegations contained in Paragraphs 1 to

23  143 of this Complaint.

24      145.    UET owns the revenues and monies its customers pay for its natural gas.

25      146.    PG&E is wrongfully holding payments made by UET customers for UET charges

26  without justification.

27      147.    PG&E's wrongful and unlawful failure to provide UET with the revenues and

28  monies UET's customers have paid for UET's charges causes UET damages, including lost

- 26 -

COMPLAINT                                                        CASE NO.: 3:15-CV-2383

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

revenues and income unlawfully withheld by PG&E, lost customers, lost market share, out of pocket costs associated with trying to collect customer accounts which PG&E falsely represented were not paid, and costs associated with trying to repair customer relationships for customers which UET mistakenly attempted to collect from when in fact the customer had fully paid all of UET's charges but PG&E had wrongfully withheld those amounts from UET.

148.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

a.    Damages in an amount to be proven at trial, but not estimated to be not less than $5 million;

b.    Damages under Cal. Civ. Code § 3294, including the value of UET's property with interest, or an amount sufficient to indemnify UET for its loss;

c.    Its attorneys' fees and costs incurred as permitted by law;

d.    Any other relief the Court deems appropriate.

## EIGHTH CAUSE OF ACTION

### (Intentional Interference with Contract)

149.    UET incorporates herein by reference all allegations set forth in Paragraphs 1 through 148 of this Complaint.

150.    UET and its customers are parties to a valid contract under which UET provides natural gas and the customers pay UET's charges for that gas.

151.    PG&E is aware of UET's contracts with its customers.

152.    PG&E's intentional acts are designed to induce a breach or disruption of the contracts between UET and its customers. Specifically, PG&E made repeated, intentionally false statements to UET every time that PG&E used the wires to transmit information about UET's customer accounts which reflected that UET's customers had not paid for all of UET's charges, but where in fact the customer had fully paid for UET's charges but PG&E intentionally allocated those amounts to PG&E's portions of the customer's bill.

153.    In addition, PG&E's customer service representatives have encouraged UET customers to cancel UET's services during calls to discuss billing issues, which is an abuse of

- 27 -

PG&E's status as UET's billings and collections agent.

154.     PG&E intended to interfere with contracts between UET and its customers by inducing UET to send disconnection notices to these customers when, in fact, the customers' UET charges were fully paid to PG&E.

155.     Certain UET customers have cancelled their contracts with UET based on PG&E's interference with the contracts between UET and these customers.

156.     PG&E's intentional interference with the contracts between UET and its customers have caused UET damages, including lost revenues and income unlawfully withheld by PG&E, lost customers, lost market share, out-of-pocket costs associated with trying to collect customer accounts which PG&E falsely represented were not paid, and costs associated with trying to repair customer relationships for customers which UET mistakenly attempted to collect from when in fact the customer had fully paid all of UET's charges but PG&E had wrongfully withheld those amounts from UET.

157.     WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

a.     Damages in an amount to be proven at trial, but estimated to be in the millions of dollars;

b.     Damages under Cal. Civ. Code § 3294;

c.     Its attorneys' fees and costs incurred as permitted by law;

d.     Any other relief the Court deems appropriate.

### NINTH CAUSE OF ACTION

### (Intentional Interference with Prospective Business Advantage)

158.     UET incorporates herein by reference all allegations set forth in Paragraphs 1 through 157 of this Complaint.

159.     UET and its customers have an economic relationship in which UET provides natural gas and the customers pay UET's charges for that gas and under which there is a probability of future economic benefit to UET.

160.     PG&E is aware of UET's economic relationship with its customers.

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

- 28 -

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

161.    PG&E's intentional acts are designed to induce a breach or disruption of the economic relationship between UET and its customers. Specifically, PG&E made repeated, intentionally false statements to UET every time that PG&E used the wires to transmit information about UET's customer accounts which reflected that UET's customers had not paid for all of UET's charges, but where in fact the customer had fully paid for UET's charges but PG&E intentionally allocated those amounts to PG&E's portions of the customer's bill.

162.    PG&E intended to interfere with the economic relationship between UET and its customers by inducing UET to send disconnection notices to these customers when, in fact, the customers' UET charges were fully paid to PG&E.

163.    In addition, PG&E's customer service representatives have encouraged UET customers to cancel UET's services during calls to discuss billing issues, which is an abuse of PG&E's status as UET's billings and collections agent.

164.    Certain UET customers have cancelled their economic relationship with UET based on PG&E's interference with the economic relationship between UET and these customers.

165.    PG&E's intentional interference with the economic relationship between UET and its customers have caused UET damages, including lost revenues and income unlawfully withheld by PG&E, lost customers, lost market share, out of pocket costs associated with trying to collect customer accounts which PG&E falsely represented were not paid, and costs associated with trying to repair customer relationships for customers which UET mistakenly attempted to collect from when in fact the customer had fully paid all of UET's charges but PG&E had wrongfully withheld those amounts from UET.

166.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

a.    Damages in an amount to be proven at trial, but estimated to be in the millions of dollars;

b.    Exemplary and punitive damages under Cal. Civ. Code § 3294;

c.    Its attorneys' fees and costs incurred as permitted by law;

d.    Any other relief the Court deems appropriate.

- 29 -

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

## TENTH CAUSE OF ACTION

### (Breach of Contract)

167.    UET incorporates herein by reference all allegations set forth in Paragraphs 1 through 166 of this Complaint.

168.    UET and PG&E are parties to a Core Gas Aggregation Service Agreement (the "Agreement") dated December 1, 2011, under which UET participates in the CTA program in PG&E's service area.

169.    The Agreement provides that PG&E will provide consolidated billing services to UET in accordance with Gas Rule 23. The Agreement provides that UET agrees to abide by the applicable sections of PG&E's tariffs, including Gas Rule 23, and PG&E's tariffs govern PG&E's performance of its obligations under the Agreement.

170.    The Agreement provides that UET will pay PG&E a monthly fee under the Agreement. UET has paid approximately $40,000 in fees every month that the Agreement has been in effect. UET has fully performed its obligations under the Agreement.

171.    PG&E has breached its obligations under the Agreement by failing to provide billing and collection services as required.  Specifically, PG&E has failed to pay to UET the amounts paid to PG&E for UET's gas commodity charges after it receives that money from the customer. Gas Rule 23.C.1.c(4)(a). PG&E is required to transfer the received payments to UET either 17 days after the bill was rendered to the customer or the next business day after the payment is received by the utility. *Id.*

172.    PG&E has also breached its obligation to specify the amount paid by each service account. *Id.* PG&E also has breached its obligations to collect the unpaid balance of all charges from customers, to send notices informing customers of unpaid balances, and to take the appropriate actions to recover any unpaid amounts owed to UET. Gas Rule 23.C.1.c(5)(a).

173.    PG&E's breach of the Agreement has caused UET damages, including lost revenues and income unlawfully withheld by PG&E, lost customers, lost market share, out of pocket costs associated with trying to collect customer accounts which PG&E falsely represented were not paid, and costs associated with trying to repair customer relationships for customers from which UET

- 30 -

1   mistakenly attempted to collect when in fact the customers had fully paid all of UET's charges but

2   PG&E had wrongfully withheld those amounts from UET.

3         174.   WHEREFORE, Plaintiff UET requests that this Court enter judgment against PG&E

4   as follows:

5         a.   Damages in an amount to be proven at trial, but estimated to be in the millions of

6         dollars;

7         b.   Exemplary and punitive damages under Cal. Civ. Code § 3294;

8         c.   Its attorneys' fees and costs incurred as permitted by the Agreement and by law;

9         d.   Any other relief the Court deems appropriate.

10   **ELEVENTH CAUSE OF ACTION**

11   **(Violation of Cal. Bus. & Prof. Code § 17200, et seq.)**

12         175.   UET incorporates herein by reference all allegations set forth in Paragraphs 1

13   through 174 of this Complaint.

14         176.   PG&E's actions as described above are unlawful, unfair, anti-competitive, and/or

15   fraudulent business practices as defined by Cal. Bus. & Prof. Code § 17200, et seq..

16         177.   PG&E's unlawful, unfair, anti-competitive, and/or fraudulent business practices have

17   caused UET damages and irreparable harm.

18         178.   UET seeks restitution of all amounts paid by UET customers to PG&E that PG&E

19   has not remitted to UET, plus applicable interest.

20         179.   WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as

21   follows:

22         a.   Restitution of all amounts paid by UET customers for UET natural gas charges

23         which are being wrongfully held by PG&E;

24         b.   Its attorneys' fees and costs incurred as permitted by law;

25         c.   Any other relief the Court deems appropriate.

26

27

28

Holland & Knight LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Tel: 415.743.6900
Fax: 415.743.6910

COMPLAINT                   CASE NO.: 3:15-CV-2383

1

### REQUEST FOR RELIEF

2   WHEREFORE, Plaintiff UNITED ENERGY TRADING, LLC d/b/a Blue Spruce Energy

3   Services prays for judgment against Defendants Pacific Gas and Electric Company, Albert Torres,

4   Bill Chen, and Tanisha Robinson as follows:

5        (1)    Actual damages on all applicable Counts in an amount to be proven at trial;

6        (2)    Treble damages and attorneys' fees and costs as provided in 18 U.S.C. § 1964(c);

7        (3)    Treble damages and attorneys' fees and costs against Pacific Gas and Electric

8              Company as provided in 15 U.S.C. § 15;

9        (4)    Exemplary and punitive damages as permitted by law;

10       (5)    Any other attorneys' fees and costs as permitted by law; and

11       (6)    Such other and further relief as may be appropriate.

12

### JURY DEMAND

13     UET respectfully demands a trial by jury on all of its claims so triable as permitted by law.

14  Dated: May 28, 2015           Respectfully submitted,

15                         HOLLAND & KNIGHT LLP

16

17                         *s/ Charles L. Coleman III*

18                         Charles Coleman III
                         Tara S. Kaushik

19                         Attorneys for Plaintiff

20                         UNITED ENERGY TRADING, LLC

21

22

23

24

25

26

27

28

*Holland & Knight LLP*
*50 California Street, Suite 2800*
*San Francisco, CA 94111*
*Tel: 415.743.6900*
*Fax: 415.743.6910*

- 32 -