UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED ENERGY TRADING, LLC,

Plaintiff,

v.

PACIFIC GAS & ELECTRIC CO., et al.,

Defendants.

Case No.  15-cv-02383-RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING MOTION FOR SANCTIONS**

## I. INTRODUCTION

This case stems from a dispute between defendant Pacific Gas & Electric Company ("PG&E"), a leading utility provider in northern California, and one of its competitors, plaintiff United Energy Trading, LLC ("UET"), a supplier of natural gas.  UET avers the defendants engage in unlawful billing, collection, and payment schemes that misappropriate funds, defraud UET, and unfairly compete for natural gas customers.  UET asserts federal claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and the Sherman Act, 15 U.S.C. § 2, in addition to state law claims under a variety of theories, including breach of contract, breach of fiduciary duty, intentional misrepresentation, and intentional interference with prospective business advantage.  PG&E counters that UET's claims in their entirety belong before the California Public Utilities Commission ("CPUC"), and in any event, argue they have not pleaded any of their separate claims with the requisite specificity.

For the reasons explained below, PG&E's motion to dismiss is granted with respect to the breach of contract claim, and granted with leave to amend with respect to the *respondeat superior*, Sherman Act, and conversion claims.  It is denied with respect to the remaining claims.  PG&E's motion for Rule 11 sanctions is also denied.

United States District Court
Northern District of California

## II. FACTUAL BACKGROUND[1]

Defendant PG&E has been the regulated monopoly utility in California since 1905.  Its service area spans from Eureka in the northern part of the state to Bakersfield in the south, and from the Pacific Ocean along the coast to the Sierra Nevada mountains in the east.  PG&E provides both electricity and natural gas to commercial and residential end-users.  Its website indicates it maintains approximately 4.3 million natural gas customers.

As a monopoly utility, PG&E is regulated by the CPUC, which determines the rates the company may charge for its electricity and natural gas.  In 1991, the California legislature sought partially to deregulate the state's natural gas utility industry.  To that end, the CPUC established an important pilot program affording residential and small commercial gas customers—called "core" customers—the opportunity to aggregate their gas loads so they could participate in competitive gas markets.  As a result of this program, Californians today are free to purchase their commodity gas from either PG&E or certain private providers known as Core Transportation Agents ("CTAs").

The delivery and billing models employed by the CTAs are crucial to the instant dispute.  CTAs purchase natural gas on the open market and then sell it to end-users using PG&E's distribution system.  As a consequence, when an end-user purchases natural gas from a CTA, PG&E charges the customer a separate transportation fee.  In the typical case, PG&E also charges customers for electricity on the same bill.

Perhaps for that reason, as another aspect of deregulation, PG&E is required to offer CTAs the opportunity to consolidate their billing with those of PG&E.  Specifically, under PG&E's relevant tariffs—known as its "Gas Rules"—CTAs may participate in a billing and collection program called "Optional Consolidated PG&E Billing."  Under this program, both the CTA's charges and PG&E's charges appear on a single, consolidated statement, and the customer pays

---

[1] The factual background is based on the averments in the complaint, which must be taken as true for purposes of a motion to dismiss.

United States District Court
Northern District of California

both sets of charges with a single check to PG&E.  If the CTA chooses this billing option, PG&E is required to calculate the CTA's charges based on the customer's gas usage and the CTA's confidential rate.  PG&E assumes responsibility for the accuracy of these charges, but not for the accuracy of the CTA's rate.

Under Consolidated Billing, PG&E also acts as the CTA's collections agent.  In that capacity, PG&E is responsible for sending notices to the CTA's customers informing them of unpaid balances, collecting from the CTA's customers the balance of unpaid charges, and taking other appropriate actions to help recover from customers any unpaid amounts owed to the CTA. After PG&E receives money from a customer, it is required to pay the CTA the amounts paid to PG&E for the CTA's charges.  Additionally, when transferring payments, PG&E is required to specify the amount paid by each service account.  If there are any amounts resulting from returned payments (e.g., the customer's check "bounces") or returned payment charges, PG&E may debit those amounts to the CTA on the billing statement for the following month.  The tariffs, however, permit no other debits or set-offs.

Plaintiff UET is a qualified CTA operating in PG&E's service area.  It signed a Core Gas Aggregation Service ("CGAS") agreement with PG&E in September 2010, and began serving customers in northern California shortly thereafter.  UET thus competes with PG&E for commodity natural gas customers.  Indeed, if UET cancels a customer's account, the end-user reverts to PG&E as the default natural gas provider.

UET supplies its natural gas to customers in California by transporting it across interstate pipelines for delivery to PG&E's Citygate.  Once the gas arrives, PG&E charges UET for storage and transportation of the gas to the end-user.  The amount of this charge is determined by reference to UET's overall volume.

In 2012, UET elected to participate in the Optional Consolidated PG&E Billing program. Accordingly, PG&E possesses all of UET's customer information, and is responsible for calculating the amounts owed to UET, billing those amounts, collecting the money, and transferring it to UET.

United States District Court
Northern District of California

The instant dispute centers on allegations that PG&E engages in unlawful activity as UET's billing and collections agent.  Specifically, UET avers three separate schemes in which PG&E defrauds UET and its customers.  In the "Payment Withholding Scheme," UET avers PG&E receives payments from UET customers and "holds" that money in a PG&E account instead of paying it to UET for its commodity charges.  In the "Energy Credit Scheme," PG&E applies credits from its own services or programs, such as rebates for the use of solar panels, to UET's commodity gas charges, effectively misappropriating UET's charges to offset the money PG&E owes to its own customers.  In the "Reversal Scheme," PG&E inappropriately "reverses" UET customer charges.  A reversal is a signal to UET that PG&E has not, and cannot, collect on UET's unpaid balance.  It should occur only where PG&E ends service to a customer, based either on non-payment or the customer's complete termination of PG&E service.  PG&E nonetheless apparently reverses UET accounts from which payment has affirmatively been received.

The complaint identifies the fulcrum of the illegality as an associated-in-fact enterprise called "Consolidated Billing."  It names three individuals—defendants Albert Torres (PG&E's Vice President of Customer Operations), William Chen (PG&E's ESP Service Manager), and Tanisha Robinson (PG&E's Supervisor for EDI Operations and ESP Billing)—alleged to be responsible for engaging in a pattern of wire fraud in furtherance of the Consolidated Billing enterprise.

UET avers PG&E's unlawful schemes have caused it substantial harm.  Specifically, UET has lost countless customers who were annoyed or upset at UET's collection efforts on fully-paid accounts, but which PG&E falsely informed UET were in arrears.  UET has also disconnected hundreds of accounts for non-payment based on PG&E's false representation that these customers had not paid UET's charges.  What is more, PG&E has inaccurately informed UET's customers that they need not pay for UET's services, and its employees have improperly induced UET's customers to switch their service to PG&E.  UET avers these actions not only were knowingly calculated to drive as many customers as possible back to PG&E, but also that PG&E engaged in these activities with the specific intent to destroy competition in the retail natural gas commodity

market.

In January 2014, UET initiated an adjudicatory proceeding before the CPUC seeking an injunction against certain of PG&E's customer confidentiality practices and a refund on UET's accounts.  Eight months later, it moved for party status in another proceeding relating to PG&E's compliance with tariffs governing CTA payment allocation.  After the Commission enjoined several of PG&E's practices and ordered discovery on the amount of UET's refund, the three schemes mentioned above apparently came to light.  Opining that the Commission could no longer provide it with complete relief, UET commenced this action.  It asserts federal claims under RICO and the Sherman Act, in addition to state law claims for breach of fiduciary duty, intentional misrepresentation, negligent misrepresentation, conversion, intentional interference with contract, intentional interference with prospective business advantage, breach of contract, and violation of California's unfair competition law.  Insisting that UET's RICO claim is frivolous, PG&E filed a motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure.  In July 2014, the Administrative Law Judge agreed to hold the CPUC proceeding in abeyance during the pendency of this action.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard asks for "more than a sheer possibility that a defendant acted unlawfully."  *Id.*  The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense."  *Id.* at 679.

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting

fraud or mistake." To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba–Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

## IV. DISCUSSION

### A. Threshold Issues

#### 1. Judicial Notice

When resolving a motion to dismiss for failure to state a claim, review is generally limited to the four corners of the complaint. *Allarcom Pay Television. Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995). The court may, however, look to exhibits attached to the complaint, *see Hal Roach Studios. Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents incorporated by reference into the complaint. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Documents upon whose contents

the complaint necessarily relies—even if the complaint does not explicitly allege their contents—

and whose authenticity and relevance are uncontested, are considered incorporated by reference.

*See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Knievel v. ESPN*, 393 F.3d

1068, 1076–77 (9th Cir. 2005).  The court may, in addition, take into account material that is

properly the subject of judicial notice.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir.

2001).  Judicial notice may be taken of a fact not subject to reasonable dispute because it either is

generally known within the trial court's territorial jurisdiction, or can be readily determined from

sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).

Here, PG&E asks that judicial notice be taken of seven documents related to the Gas Rules

and earlier CPUC proceedings.[2] Defs.' RJN Ex. A–G.  UET objects only to exhibits A, D, and E

on the grounds that it did not refer to those documents in its complaint.  UET also asks that notice

be taken of PG&E's briefs in opposition to UET's motion to hold in abeyance the CPUC

proceeding it initiated. Pl.'s RJN Ex. 1, 2.

Because Exhibit A is a published tariff approved by the CPUC, and Exhibits D and E are

public records from relevant CPUC proceedings to which UET sought party status, PG&E's

request for judicial notice is granted.  In the interest of completeness, UET's request that notice be

taken of PG&E's briefs on abeyance is also granted.

## 2. Jurisdiction

As a threshold matter, PG&E contends UET's federal claims should be stayed under the

primary jurisdiction doctrine and its state law claims dismissed based on the exclusive jurisdiction

of the CPUC.

---

[2] The documents are: Gas Schedule G-CT, Gas Rule No. 23, UET's First Amended Complaint filed in CPUC Proceeding C.14-01-006, UET's Motion Requesting Party Status in CPUC proceeding A.13-12-012, the Scoping Memorandum and Ruling of Assigned Commissioner and Administrative Law Judge filed in CPUC proceeding C.14-01-006, UET's Motion to Hold Proceeding in Abeyance in CPUC proceeding C.14-01-006, and the Administrative Law Judge's Ruling Granting Motion to Hold Case in Abeyance in CPUC proceeding C.14-01-006. Defs.' RJN Ex. A–G.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**a. Primary Jurisdiction**

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). The doctrine may properly be invoked only "in a limited set of circumstances"; it "is not designed to 'secure expert advice' from agencies every time a court is presented with an issue conceivably within the agency's ambit." *Id.* at 1114 (internal quotations omitted). "It is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Id.* (internal quotations omitted). In deciding whether to apply the doctrine, courts typically assess whether there is: "(1) [a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Id.* at 1115.

In lieu of examining these factors, PG&E urges this Court to follow the example of *PNG Telecomms., Inc. v. Pac-West Telecomm, Inc.*, No. Civ. S-10-1164 FCD/EFB, 2010 WL 3186195 (E.D. Cal. Aug. 11, 2010). That case involved a dispute over an alleged interconnection agreement implementing obligations under the federal Telecommunications Act. *See id.* at *5. The district court found it appropriate to defer to the CPUC for three reasons. First, the Telecommunications Act specifically granted state commissions the authority to interpret the relevant provision of the federal statute at issue. *Id.* at *7. Second, the CPUC had expertise in resolving interconnection disputes. *Id.* Third, the issues in the case were already pending before the CPUC, so deference would avoid "an extremely inefficient bypass of an administrative remedy." *Id.* (internal quotation marks omitted).

Unlike in *PNG*, prudential considerations do not favor deferring UET's federal claims. First, neither RICO nor the Sherman Act implicate regulatory authority Congress placed within the specific jurisdiction of the CPUC. Second, PG&E has not identified any issue that requires the

United States District Court
Northern District of California

1  Commission's technical expertise to resolve, much less any question of first impression.  True,

2  PG&E casts this action as a billing dispute, and, invoking UET's CPUC complaint, insists the

3  claims rely on interpretation of the Gas Rules.  *See* Reply in Supp. of Mot. to Dismiss at 9:3, 9:17–

4  10:1, 10:24–25.  UET's federal complaint, however, is predicated on fraudulent behavior

5  involving misrepresentations found in emails sent over interstate wires.  PG&E has not shown

6  how the propriety of this behavior turns on a specific interpretation of Gas Rules 10, 11, 23, or 27.

7  Third, unlike in *PNG*, the ALJ in the instant dispute held the CPUC proceeding in abeyance—

8  notwithstanding the fact the parties had engaged in significant discovery—because UET

9  introduced allegations of tortious and criminal conduct that "spilled over the jurisdictional limits

10  of the Commission." Defs.' Request for Judicial Notice ("RJN") Ex. E.  Given that observation,

11  rather than hindering judicial efficiency, the ALJ noted this Court's consideration would "serve[]

12  judicial economy." *Id.* Finally, it is worth noting the Ninth Circuit has questioned whether primary

13  jurisdiction doctrine even permits a case to be referred to a state agency rather than a federal

14  agency.  *See Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*, 99 F.3d 937, 949 n.12 (9th Cir. 1996).

15  In light of these factors, and the discretionary nature of the primary jurisdiction doctrine, its

16  application is not appropriate in the present case.

17  **b. The CPUC's Exclusive Jurisdiction**

18  PG&E maintains UET's state law claims fall within the exclusive jurisdiction of the

19  CPUC.  Its argument rests on two premises: first, that UET's allegations are wholly based on the

20  CGAS agreement, which requires that disputes be reviewed in the first instance by the CPUC;

21  second, that application of the *Covalt* test mandates that the instant dispute falls within the

22  exclusive jurisdiction of the CPUC.

23  In September 2010, UET signed a CGAS agreement with PG&E that governs their core

24  transport relationship.  Two clauses are particularly relevant.  First, the agreement provides that

25  "[c]omplaints against the utility arising out of this Agreement shall be enforced only under the

26  provisions of Section 1702 of the Public Utilities Code." Mot. to Dismiss at 5:9–11.  That section

27  creates a process permitting a CTA to file a complaint with the CPUC against public utilities like

28

1    PG&E.  Second, the CGAS agreement contains a waiver stating that "[n]o party under this

2    Agreement shall be assessed any special, punitive, consequential, incidental, or indirect damages,

3    whether in contract or tort (including negligence) or otherwise, for any breach, actions or inactions

4    arising from[,] out of, or related to this Agreement." *Id.* at 5:13–17.

5         PG&E maintains these clauses, taken together, forbid this Court from hearing UET's state

6    law claims.  At bedrock, its argument is that UET raises nothing more than a billing dispute

7    founded on PG&E's application of its CPUC-approved Gas Rules.  As such, the claims

8    necessarily arise out of the CGAS agreement because it mandates compliance with the Gas Rules.

9    The agreement, moreover, provides that disputes must be adjudicated before the CPUC, and the

10   waiver provision bars the recovery of relief beyond what the CPUC can mandate.  Thus, according

11   to PG&E, no additional recovery can be had and jurisdiction lies exclusively with the CPUC.

12        UET counters that while its CPUC complaint quarreled with PG&E's compliance with Gas

13   Rule 23, its federal complaint avers intentionally tortious conduct, fraud, and violations of

14   statutory law.  According to UET, nothing in the Gas Rules, the CGAS Agreement, or any

15   decision by the CPUC could permit PG&E to monopolize, commit wire fraud, or perpetuate the

16   other unlawful acts mentioned.  Thus, the instant dispute falls outside the strictures of the CGAS

17   Agreement.  What is more, UET contends the waiver provision is invalid as to allegations of

18   fraud, intentionally tortious conduct, or violations of statutory law, all of which are carefully

19   pleaded in its federal complaint.

20        PG&E is correct with respect to the breach of contract claim, but UET has the more

21   persuasive argument with respect to all other claims.  UET avers PG&E breached the CGAS

22   contract because it violated Gas Rule 23.C.1.c(4)(a) by failing to pay UET the amounts paid to

23   PG&E for UET's gas commodity charges after it receives payment from UET's customers.  UET

24   also claims PG&E violated Gas Rule 23.C.1.c(5)(a) by failing to specify the amount paid by each

25   service account, collect the unpaid balance of all charges from customers, send notices informing

26   customers of unpaid balances, and take actions to recover unpaid amounts owed to UET.  These

27   claims arise under the Gas Rules, the compliance with which the CGAS contract mandates, so

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    they not only stem from the CGAS agreement, but their adjudication would require this Court to

2    construe PG&E's obligations under the Gas Rules.  Because such a ruling could interfere with the

3    CPUC's exercise of its authority, the breach of contract claim falls within the exclusive

4    jurisdiction of the CPUC.

5            With respect to the remaining claims, UET does not quarrel with PG&E's *application* of

6    the Gas Rules as not "to its liking," Reply in Supp. of Mot. to Dismiss at 1:22; instead it objects to

7    intentionally tortious conduct it avers caused it considerable harm.  In other words, although

8    Consolidated Billing is a service provided pursuant to a CPUC-regulated agreement, the essence

9    of UET's claims is not that the Payment Withholding Scheme, Energy Credit Scheme, and

10   Reversal Scheme are mistaken applications of the Gas Rules amounting to a billing dispute

11   governed by the CGAS agreement.  Rather, UET avers those schemes represent intentionally

12   tortious conduct that exceeds anything contemplated by the Gas Rules.  Given that the allegations

13   are assumed to be true, the remaining claims, as plead, fall outside the four corners of the CGAS

14   Agreement.

15           PG&E also argues that *San Diego Gas & Electric Co. v. Superior Court*, 13 Cal. 4th 893

16   (1996) ("*Covalt*"), supports the CPUC's exclusive jurisdiction.  The three-part test laid out in that

17   case is designed to resolve conflicts between Public Utilities Code section 1759,[3] which limits

18   jurisdiction to review an order of the CPUC to the California Court of Appeal and the California

19   Supreme Court, and section 2106,[4] which grants courts jurisdiction to hear actions for damages

20

21   [3] "No court of this state, except the Supreme Court and the court of appeal . . . shall have
     jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to
22   suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the
     commission in the performance of its official duties . . . ." Cal. Pub. Util. Code § 1759(a).

23
     [4] "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited
24   or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by
     the Constitution, any law of this State, or any order or decision of the commission, shall be liable
25   to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or
     resulting therefrom. If the court finds that the act or omission was wilful, it may, in addition to the
26   actual damages, award exemplary damages. An action to recover for such loss, damage, or injury
     may be brought in any court of competent jurisdiction by any corporation or person." Cal. Pub.
27   Util. Code § 2106.

28

against a public utility that violates California law. *See Kairy v. SuperShuttle Intern.*, 660 F.3d 1146, 1150 (9th Cir. 2011). To determine whether an action is barred by § 1759, and thus falls within the CPUC's exclusive jurisdiction, courts ask (1) whether the CPUC has the authority to adopt a regulatory policy on the subject matter of the litigation; (2) whether the CPUC exercised that authority; and (3) whether action in the case before the court would hinder or interfere with the CPUC's exercise of regulatory authority. *See Covalt*, 13 Cal. 4th at 923, 926, 935.

Invoking UET's complaint before the CPUC, as opposed to its federal complaint, PG&E insists the *Covalt* test is met because: (1) the issue is whether PG&E properly interpreted and applied the Gas Rules, a subject over which the CPUC has regulatory authority; (2) the CPUC not only approved the Gas Rules and the CGAS Agreement, but has ongoing proceedings on these matters, so it has exercised its authority; and (3) UET's state law claims require the Court to evaluate UET's interpretation of Gas Rule 23, which would interfere with the CPUC's exclusive right to interpret its own rules.

PG&E's exposition of the complaint is wide of the mark because it assumes the dispute is wholly derived from UET's interpretation of Gas Rule 23. To the contrary, outside of the breach of contract claim, the federal complaint does not ask this Court to construe Gas Rule 23 because UET avers there is no application of that rule which would permit PG&E to engage in intentionally tortious conduct. Instead, notwithstanding Gas Rule 23, UET seeks to establish that PG&E's behavior amounts to a violation of several provisions of California law. Perhaps for that reason, PG&E can neither point to any language in Rule 23 that the complaint asserts to have been misapplied, nor advance an interpretation of Rule 23 that purports to sanction the conduct UET has condemned.

Framed in this manner, the *Covalt* test does not bar UET's action. The CPUC has authority to make and approve rules regarding both CTAs and Consolidated Billing—two subjects upon which it has exercised its authority via the Gas Rules—but UET does not ask this Court to construe those rules, so the instant action does not threaten to interfere with the CPUC's exercise of its authority.

CASE NO. 15-cv-02383-RS

1    *Nwabueze v. AT&T, Inc.*, No. C 09–1529 SI, 2011 WL 332473 (N.D. Cal. Jan. 29, 2011),

2    is instructive.  There, the plaintiff challenged a telephone billing and collection practice known as

3    "cramming," advancing, like UET here, a federal claim under RICO, in addition to state law

4    claims for, among other things, breach of fiduciary duty, tortious interference with contract, and

5    violation of California's unfair competition law. *Id.* at *4.  AT&T argued the CPUC had exclusive

6    jurisdiction over the state law claims because the CPUC had adopted an array of measures

7    specifically aimed at addressing cramming. *Id.* at *13.  Further, AT&T, like PG&E in this dispute,

8    insisted the complaint merely challenged its billing and collection practices, and argued an award

9    of damages would effectively replace the CPUC's rules. *Id.* at 14.  Applying the *Covalt* test, the

10   district court found that a private action for damages would not undermine the CPUC's regulatory

11   regime.[5]  *Id.* at *16.  In contrast to a claim for injunctive relief, which would require the court to

12   impose procedures or prescribe specific steps AT&T must take, the court reasoned a lawsuit for

13   *past* damages would not interfere with the CPUC's ongoing, *prospective* regulation of the relevant

14   industry.  *Id.*  Moreover, the court found it persuasive that the "plaintiff d[id] not allege any claims

15   based on the CPUC's cramming rules, and instead allege[d] claims based on violations of state

16   law." *Id.* at *17.

17          Similarly, UET avers claims based on violations of state law, rather than PG&E's Gas

18   Rules,[6] and seeks only damages, rather than injunctive relief, as redress for past violations.  In

19   ―――――――――――――――

20   [5] The court also relied on *Hartwell Corporation v. Superior Court*, 27 Cal. 4th 256 (2002). There,
     the California Supreme Court applied *Covalt* and found that a challenge to the *adequacy* of

21   drinking water standards was barred because it would interfere with a "broad and continuing
     supervisory or regulatory program of the PUC." *Id.* at 276.  The court also held, however, that the

22   plaintiffs could proceed on a theory that the drinking water failed to meet the federal and state
     drinking water standards because those claims would not interfere with the CPUC's regulatory

23   policy.

24   [6] PG&E's reliance on *Davis v. S. Cal. Edison Co.*, 236 Cal. App. 4th 619 (2015) is therefore
     misplaced.  In *Davis*, the plaintiff contended the defendant, "in processing his applications,

25   violated . . . Tariff Rule 21 (Rule 21), Tariff Rule 16 (Rule 16), the California Renewable Energy
     Small Tariff (CREST) program, and the Net Energy Metering (NEM) program." *Id.* at 622.

26   UET's claims, by contrast, do not arise under the Gas Rules; they arise under state law.  Moreover,
     as *Davis* points out, "where the courts have found that the PUC does not have exclusive

27   jurisdiction, the lawsuits have typically not required interpretation of PUC-approved rules." *Id.* at
     640.  Such is the case here.

28

United States District Court
Northern District of California

1  addition, unlike the circumstances in *Waters v. Pacific Bell Company*, 12 Cal. 3d 1 (1974), where

2  a damages award was improper because the CPUC had adopted a policy limiting the liability of

3  public utilities for the specific act alleged, PG&E offers no such policy.  Accordingly, UET's

4  remaining claims are not barred by § 1759 because a lawsuit for damages based on past state law

5  violations will not interfere with the CPUC's prospective regulation of the commodity natural gas

6  market.

7      **B. Viability of Federal Claims**

8          **1. RICO**

9          UET's first claim proceeds under 18 U.S.C. § 1962(c), which makes it unlawful for any

10  person associated with an alleged racketeering enterprise "to conduct or participate, directly or

11  indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

12  18 U.S.C. § 1962(c).[7]   To state a civil claim for violations of § 1962(c), a plaintiff must allege

13  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as

14  'predicate acts') (5) causing injury to plaintiff's business or property."   *Grimmett v. Brown*, 75

15  F.3d 506, 510 (9th Cir. 1996) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

16  "While the factual circumstances of the fraud itself must be alleged with particularity, the state of

17  mind—or scienter—of the defendants may be alleged generally." *Odom*, 486 F.3d at 554.

18          As noted above, UET contends that the individual defendants engaged in three separate

19  schemes—the Payment Withholding Scheme, Energy Credit Scheme, and Reversal Scheme—

20  which had the effect of directly injuring UET.  Specifically, UET avers the individual defendants

21  associated with "Consolidated Billing," an enterprise "separate from [PG&E's] primary business

22  activities," Compl. ¶ 33, for the purpose of engaging in ongoing acts of wire fraud.  UET details

23  ten alleged acts of fraud directed and carried out by these actors, involving the same type of data

24  transmission for the same purpose, spanning over two years, and continuing to the present day.

25  

26  [7] "[T]he survival of plaintiffs' claim under § 1962(c) will ensure the survival of their claim under
    § 1962(d)," *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc), thus, only the
27  claim under § 1962(c) need be addressed.

28

For each predicate act of wire fraud, moreover, UET identifies the manner in which false information was transmitted, the exact date, the information contained in the transmission, the reason why it was incorrect, and the damages that resulted.  UET therefore has alleged "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property."  *Grimmett*, 75 F.3d at 510.

PG&E's first attack on the RICO claim is to argue that UET has not adequately identified an "enterprise" sufficiently distinct from PG&E.  RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  Though this language is broad, the Supreme Court has provided guidance.  In *United States v. Turkette*, 452 U.S. 576 (1981), the Court defined a RICO enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* at 583.  Later, in *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001), the Court clarified plaintiffs must "allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Id.* at 161.

PG&E's primary contention is that although UET asserts its claim against three specific employees, "UET has not pled a separate entity, in addition to PG&E itself, with sufficient particularity to support its RICO claim." Mot. to Dismiss at 13:5–7.  Specifically, PG&E argues a group of employees cannot be considered a distinct entity under RICO if they are "simply doing [their] jobs." *Id.* at 13:9–10.  Further, PG&E insists "Consolidated Billing" is a CPUC mandated billing option and a unit of PG&E; not a separate entity from PG&E.  Thus, from that perspective, UET is simply objecting to the operations of PG&E, and not to the separate actions of the individual defendants.  Because an entity that is the enterprise cannot also be the RICO defendant, *Lopez v. Dean Witter Reynolds, Inc.*, 591 F. Supp. 581, 585 (N.D. Cal. 1984), PG&E concludes that UET's RICO claim must fail for lack of distinctiveness.

UET responds that a RICO "enterprise" need not be a legal entity, but may be an "association-in-fact" of individual defendants who are corporate employees.  UET relies on *Cedric*

United States District Court
Northern District of California

1    *Kushner*, where the Supreme Court held that where "a corporate employee, acting within the scope

2    of his authority, allegedly conducts the corporation's affairs in a RICO-forbidden way[,] [t]he

3    corporate owner/employee, a natural person, is distinct from the corporation itself." 533 U.S. at

4    163 (internal quotation marks and citations omitted).  UET thus argues it met the distinctiveness

5    requirement because it named as RICO defendants only the individual employees responsible for

6    the predicate acts, and alleged both that the Consolidated Billing enterprise is separate from PG&E

7    (since PG&E is not in the business of offering consolidated billing services), and that the

8    individual defendants associated together to conduct the enterprise's affairs through a pattern of

9    racketeering activity.

10        Given the Supreme Court's guidance in *Cedric Kushner*, UET has pleaded adequately

11   RICO's distinctiveness requirement.  UET does not allege that PG&E is either a RICO person or a

12   RICO defendant.  Instead, UET avers three PG&E employees associated-in-fact to conduct the

13   affairs of a Consolidated Billing enterprise through a pattern of racketeering.  Because "[a]

14   corporate employee who conducts the corporation's affairs through an unlawful RICO pattern of

15   activity" is distinct from that corporation, UET identifies an entity sufficiently distinct from

16   PG&E by stating allegations against the individual defendants and averring the enterprise exists

17   apart from the corporate vehicle.  *Id.* at 165 (quotation marks and citation omitted).

18        PG&E's reliance on *Riverwoods Chappaqua Corporation v. Marine Midland Bank, N.A.*,

19   30 F.3d 339, 344 (2d Cir. 1994), is misplaced.  *Riverwoods* not only predates *Cedric Kushner*, but

20   in *Riverwoods*, unlike here, the corporation, Marine Midland, was both a RICO defendant and a

21   participant in the alleged associated-in-fact enterprise.[8] *See id.* at 333–34.  Further, while the

22

_____

23   [8] Thus, while the *Riverwoods* court noted "employees *in association with* the corporation do not
     form an enterprise distinct from the corporation," 30 F.3d at 344, that is not the case here as the
24   complaint does not allege PG&E is a RICO defendant. For similar reasons, *In re Toyota Motor*
     *Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 826
25   F. Supp. 2d 1180 (C.D. Cal. 2011), is off point.  There, none of the individual employees were
     named as RICO defendants, and the complaint merely alleged the defendant corporations
26   associated-in-fact to carry on their primary business activities.  *Id.* at 1202–03.  Here, the
     individual defendants are named, PG&E is not alleged to be a part of the RICO enterprise, and the
27   complaint avers the individuals associated-in-fact to engage in fraudulent conduct separate and
     apart from their corporate responsibilities.  PG&E is correct these allegations stand in tension with

28

United States District Court
Northern District of California

1   individual defendants here undertook their actions in connection with PG&E's corporate affairs,

2   UET does *not* aver PG&E instructed the employees to dispatch fraudulent bills or commit wire

3   fraud.   In other words, UET does not contend Robinson, Torres, and Chen were merely "doing

4   their jobs" because the complaint does not characterize PG&E to be saying their "job" is to engage

5   in fraud.  As a result, by stating the allegations against the individual defendants and their

6   associated-in-fact enterprise, UET targets "a 'person' and an 'enterprise' that is not simply the

7   same 'person' referred to by a different name." *Cedric Kushner*, 533 U.S. at 161.

8        PG&E next insists that UET has failed satisfactorily to identify the requisite "pattern of

9   racketeering activity."  That requirement mandates allegations of at least two separate yet related

10  predicate acts stemming from conduct of an open ended nature, carried out over a period lasting

11  longer than one year, and posing a threat to continue. *Religious Tech. Ctr. v. Wollersheim*, 971

12  F.2d 364, 366–67 (9th Cir. 1992).  Predicate acts are related if they have "the same or similar

13  purposes, results, participants, victims or methods of commission." *H.J., Inc. v. Nw. Bell Tel. Co.*,

14  492 U.S. 229, 240 (1989).  Continuity can be shown by proving "a series of related predicates

15  extending over a substantial period of time," or "past conduct that by its nature projects into the

16  future with a threat of repetition." *Id.* at 241–42.

17       PG&E argues UET's RICO claim fails because the "pattern" element must be evaluated as

18  to each individual defendant.  In particular, PG&E maintains the complaint falls silent as far as an

19  explanation of how each RICO defendant—Robinson, Torres, and Chen—personally engaged in a

20  racketeering activity even once.  UET counters that it identified at least ten specific acts of wire

21  fraud involving each of the individual defendants because it alleged the defendants oversee,

22  manage, implement, and direct the three schemes.

23       Accepting the complaint's allegations as true and construing them in the light most

24  favorable to the non-moving party, as is required, UET has pleaded adequately a "pattern of

25

26  _____

27  the *respondeat superior* count.  As discussed below, PG&E's motion to dismiss that claim will be
    granted.

28

1   racketeering activity" because it credits at least ten different acts to the direction and supervision

2   of each individual defendant, even if they were working together.

3         In sum, UET's RICO claim has been adequately pleaded.  Accordingly, PG&E's motion to

4   dismiss this count must be denied.

5                        **2. RICO Claim Two: Respondeat Superior**

6         UET asserts PG&E is liable on an agency theory for the racketeering activities committed

7   by Robinson, Torres, and Chen. To establish an agency relationship "a party must demonstrate the

8   following elements: (1) there must be a manifestation by the principal that the agent shall act for

9   him; (2) the agent must accept the undertaking; and (3) there must be an understanding between

10  the parties that the principal is to be in control of the undertaking." *Bowoto v. Chevron Texaco*

11  *Corp.*, 312 F. Supp. 2d 1229, 1239 (N.D. Cal. 2004).

12        Here, UET's factual assertions are insufficient to state a claim against PG&E on an agency

13  theory.  UET avers (1) PG&E is distinct from the Consolidated Billing program operated by

14  Robinson, Torres, and Chen, (2) PG&E has benefitted from its employees' racketeering activities,

15  and (3) PG&E exercised control over the individual defendants' racketeering activities.  These

16  conclusory allegations fail to demonstrate the necessary understanding between PG&E and the

17  enterprise, much less establish how PG&E was *in control* of the illegal undertaking.  PG&E's

18  motion to dismiss is therefore granted as to this count with leave to amend.

19                        **3. Sherman Act: Attempt to Monopolize**

20        The third claim proceeds under Section 2 of the Sherman Act, 15 U.S.C. § 2.  That

21  provision outlaws anticompetitive conduct that monopolizes or threatens actual monopolization.

22  To establish a claim for an attempt to monopolize, UET must demonstrate four elements: "(1)

23  specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct

24  directed at accomplishing that purpose; (3) a dangerous probability of achieving 'monopoly

25  power'; and (4) causal antitrust injury." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1432–33

26  (9th Cir. 1995).

27        Here, UET avers PG&E intends to monopolize the deregulated retail natural gas market in

28

United States District Court
Northern District of California

CASE NO. 15-cv-02383-RS

18

1   its service area by forcing out CTAs using its market power and abusing its fiduciary relationship

2   under the Consolidated Billing program. UET claims PG&E possesses market power because it is

3   the default regulated monopoly utility for natural gas.  If a customer cancels another provider's

4   service, the customer automatically becomes PG&E's customer if they wish to buy natural gas in

5   PG&E's service area. UET asserts PG&E also has market power because it controls all billing and

6   collection activities for the companies who have chosen to use Consolidated Billing. PG&E

7   charges a fee for those services, but refuses to disclose its payment allocation criteria, so UET and

8   other CTAs cannot determine accurately whether their customers have paid their bills. UET

9   maintains it has suffered antitrust injury resulting from PG&E's anti-competitive conduct because,

10  among other things, it has lost customers, profits, and market share. PG&E points out that the

11  Consolidated Billing program is completely optional, and had UET chosen another option, it

12  would have primary control of its own billing and collection services.

13          UET's claim under the Sherman Act fails because UET has not sufficiently pleaded that

14  the alleged schemes, whether independently or in combination, caused antitrust injury or

15  foreclosed competition in a substantial share of the relevant market.  To make out its claim for

16  attempted monopolization, UET must demonstrate how PG&E's conduct causes injury to

17  competition beyond UET.  *See Rebel Oil*, 51 F.3d at 1433; *United States v. Microsoft Corp.*, 253

18  F.3d 34, 58 (D.C. Cir. 2001).  Here, UET avers PG&E's schemes "have had an anticompetitive

19  effect across the entire retail natural gas commodity market," Compl. ¶ 119, but it has not pleaded

20  sufficient supportive facts.  Instead, it claims the unlawful reversion of its customers to PG&E

21  "resulted in a reduction in competition," *id.*— bare allegations that fail to shed light on whether

22  PG&E's practices extend beyond its relationship with UET, and if so, how they affected other

23  CTAs and providers within the commodity natural gas market.  Accordingly, PG&E's motion to

24  dismiss this claim for relief will be granted but with leave to amend.

25          **C. State Law Claims**

26                  **1. Breach of Fiduciary Duty**

27          In order to plead a claim for breach of fiduciary duty, a plaintiff must show the existence of

28

United States District Court
Northern District of California

1    a fiduciary relationship, its breach, and damage caused by the breach. *Benasra v. Mitchell*

2    *Silberberg & Knupp LLP*, 123 Cal. App. 4th 1179, 1183 (2004); *Pierce v. Lyman*, 1 Cal. App. 4th

3    1093, 1101 (1991).  Sounding in fraud, this claim is subject to Rule 9(b)'s heightened pleading

4    standards.  *See Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995).

5            Here, pursuant to the Consolidated Billing program, UET avers PG&E acts as its billing

6    and collections agent.  As such, PG&E possesses all of UET's customer information, and is

7    responsible for calculating the amounts owed to UET, billing those amounts, collecting the

8    money, and transferring it to UET.  Because they are UET's customers, however, UET avers it has

9    the right to control and supervise PG&E's billing and collection activities. Accordingly, UET

10   avers PG&E is its agent under California Civil Code § 2295,[9] and owes UET a fiduciary duty of

11   loyalty as a result. *See Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1575–82 (1994).

12           UET avers PG&E breached its fiduciary duty in a number of ways, including by (1)

13   retaining money it collected from UET's customers for its own benefit, (2) making false

14   representations to UET about the status of its customer accounts, and (3) encouraging UET's

15   customers to cancel UET's services so the customer will revert back to PG&E.  Each of these

16   allegations is supported by the examples contained in the three fraud-based schemes.  UET also

17   avers PG&E's breach was intentional and made with the knowledge and authorization of William

18   Chen.  Finally, UET adds it has been damaged by PG&E's breach through the money and

19   customers it has lost as a result.

20           Given the above, UET has pleaded facts sufficient to state a viable claim against PG&E for

21   breach of fiduciary duty.  PG&E's motion to dismiss this count is accordingly denied.

22                          **2. Intentional Misrepresentation**

23           To state a claim for intentional misrepresentation under California law, a plaintiff must

24   plead seven elements with particularity: (1) the defendant represented to the plaintiff that an

25

26   _____

27   [9] Section 2295 provides: "[a]n agent is one who represents another, called the principal, in
     dealings with third persons." Cal. Civ. Code § 2295.

28

United States District Court
Northern District of California

important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for the truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the representation was a substantial factor in causing that harm to the plaintiff. *Manderville v. PCG & S Group, Inc.*, 146 Cal. App. 4th 1486, 1498 (2007).

Here, UET avers PG&E made repeated, intentionally false statements to UET every time PG&E used the wires to transmit information about UET's customer accounts reflecting that UET's customers had not paid for UET's charges, but where the customer had in fact fully paid or PG&E had instructed them not to pay.  The six specific examples articulated in the Payment Withholding Scheme and the Energy Credit Scheme illustrate these allegations with particularity. UET avers PG&E intended it to rely on the false statements because PG&E prevented it from discovering the schemes, and UET justifiably relied on the false representations by disconnecting its customers when their charges were in fact fully paid.  Finally, UET avers its damages include lost revenues and income unlawfully withheld by PG&E, lost customers, lost market share, out of pocket costs associated with trying to collect customer accounts that PG&E falsely represented were not paid, and costs associated with trying to repair customer relationships.

UET has adequately pleaded a claim for intentional misrepresentation against PG&E. PG&E's motion to dismiss this count is accordingly denied.

### 3. Negligent Misrepresentation

To state a claim for negligent misrepresentation, a plaintiff must allege (1) misrepresentation of a material fact; (2) absent reasonable grounds for believing it to be true; (3) intent to induce reliance; (4) justifiable reliance by the plaintiff who is unaware the representation is false; and (5) damages.  While knowledge of falsity is not required, the misrepresentation must be affirmative; omissions or implied representations are insufficient.  *Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007).  Most courts in this district also

1    subject state common law negligent misrepresentation claims to the heightened pleading standards

2    of Rule 9(b).  *Jackson v. Fischer*, 2013 WL 6732872, at *17 (N.D. Cal. Dec. 20, 2013) (internal

3    citations omitted).

4         For the same reasons stated in the previous section, UET has pleaded adequately a claim

5    for negligent misrepresentation.  PG&E's motion to dismiss this count is accordingly denied.

6                              **4. Conversion**

7         To sustain a claim for conversion, a plaintiff must demonstrate (1) the plaintiff's

8    ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act

9    or disposition of property rights; and (3) damages.  *Burlesci v. Petersen*, 68 Cal. App. 4th 1062

10   (1998).  Here, UET avers it owns the money its customers pay for its natural gas, yet PG&E

11   wrongfully withheld payments made by UET customers for UET charges.  UET claims its

12   damages include lost revenues and income unlawfully withheld by PG&E, lost customers, lost

13   market share, out of pocket costs associated with trying to collect customer accounts that PG&E

14   falsely represented were not paid, and costs associated with trying to repair customer relationships.

15        PG&E maintains the conversion claim fails both because the amount converted is

16   approximate and UET cannot establish it is entitled to immediate possession of the property.

17   PG&E is correct that "actions for the conversion of money have not been permitted when the

18   amount of money involved is not a definite sum."  *PCO, Inc. v. Christensen, Miller, Fink, Jacobs,*

19   *Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 396 (2007).  Though UET points generally

20   to the ten incidents it pleads with respect to the fraudulent schemes, the uncertainty with respect to

21   the sum it seeks is too great given the damages it claims.  Thus, UET has failed to plead

22   sufficiently a viable claim for conversion.  The motion to dismiss this count is accordingly granted

23   but with leave to amend.

24                    **5. Intentional Interference with Contract**

25        To sustain a claim for intentional interference with contract, a plaintiff must show: "(1) a

26   valid contract between plaintiff and a third party; (2) defendants' knowledge of the contract; (3)

27   defendants' intentional acts designed to induce a breach or disruption of the contractual

28

United States District Court
Northern District of California

1   relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting

2   damage." *Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 774 (9th Cir.

3   2008).

4          UET avers it is party to a valid contract with its customers where it provides natural gas in

5   return for money.  It asserts PG&E is aware of these contracts and has engaged in intentional acts

6   designed to disrupt them.  These acts include making repeated, intentionally false statements to

7   UET that UET's customers had not paid for UET's charges, when in fact the customers had fully

8   paid or PG&E had instructed them not to pay.  UET also avers PG&E's customer service

9   representatives encourage UET's customers to cancel UET's services during calls to discuss

10  billing issues.  UET contends its contractual relationships were actually breached because some of

11  its customers cancelled their contracts as a result of PG&E's interference.  UET claims damages in

12  the form of lost revenue and lost income, amongst others.

13         PG&E argues UET's claim fails because the interference alleged is not by a third-party to

14  the contract.  Yet that is precisely the position PG&E occupies in relation to UET's agreement

15  with its customers.  Accordingly, UET has pleaded a viable claim for intentional interference with

16  contract.  PG&E's motion to dismiss this count is accordingly denied.

                    **6. Intentional Interference with Prospective Business Advantage**

17

18         Under California law, a claim based on intentional interference with prospective business

19  advantage requires (1) an economic relationship between the plaintiff and some third party with

20  the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the

21  relationship; (3) intentional acts, apart from the interference itself, by defendant designed to

22  disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the

23  plaintiff proximately caused by the acts of defendant. *See Korea Supply Co. v. Lockheed Martin*

24  *Corp.*, 29 Cal. 4th 1134, 1153–54 (2003).

25         UET's factual averments here largely mirror those in the prior section. UET has therefore

26  pleaded a viable claim for intentional interference with prospective business advantage.  PG&E's

27  motion to dismiss this count is accordingly denied.

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

United States District Court
Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 7. Breach of Contract

As detailed above, UET's breach of contract claim falls within the exclusive jurisdiction of the CPUC. PG&E's motion to dismiss this count is accordingly granted without leave to amend.

### 8. Unfair Competition

Section 17200 of California's Unfair Competition Law ("UCL") prohibits all unlawful, unfair, or fraudulent business acts or practices. Cal. Bus. & Prof. Code § 17200 *et seq.* Each of these three types of business acts or practices are independently actionable; "a plaintiff may show that the acts or practices at issue are either unlawful *or* unfair *or* deceptive." *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1169 (2002). "A business practice is 'unlawful' if it is forbidden by law." *Id.* (internal quotation marks omitted). "Unfair" business practices are those which "offend[] an established public policy"; are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"; or those which do not outweigh "the gravity of the harm to the alleged victim." *Id.* at 1169-70 (internal quotation marks omitted). Finally, a business practice is "deceptive" if "members of the public are likely to be deceived." *Id.* at 1170.

Here, the complaint incorporates all of the substantive allegations preceding this claim for relief and asserts PG&E's conduct constitutes unlawful, unfair, anti-competitive, and fraudulent business practice. UET seeks restitution of all amounts paid by UET customers to PG&E that it has not remitted to UET, plus applicable interest.

UET has pleaded adequately a claim under the "unlawful" prong because the complaint demonstrates how PG&E's conduct amounts to a predicate violation of other laws. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable") (citations and quotation marks omitted). The motion to dismiss the UCL count is accordingly denied.

### D. Motion for Sanctions

PG&E moves for sanctions against UET on the theory that its RICO claim is frivolous.

1   Rule 11 sanctions are appropriate when an attorney presents to the court "claims, defenses, and

2   other legal contentions . . . [not] warranted by existing law or by a nonfrivolous argument for the

3   extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ.

4   P. 11(b)(2). Where, as here, a "complaint is the primary focus of Rule 11 proceedings, a district

5   court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or

6   factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable

7   and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th

8   Cir. 2005) (citation omitted).

9           The allegations of fraudulent conduct contained in the complaint are not legally or

10   factually baseless, and UET appears to have conducted a reasonable inquiry prior to filing its

11   claims.  Accordingly, PG&E's motion for sanctions is denied.

12

13                                     **V. CONCLUSION**

14           PG&E's motion to dismiss is granted with respect to the breach of contract claim, and

15   granted with leave to amend with respect to the *respondeat superior*, Sherman Act, and

16   conversion claims.  It is denied with respect to the remaining claims. PG&E's motion for sanctions

17   is denied.  Any amended complaint UET elects to file must be filed within thirty (30) days from

18   the date of this order.

19

20   **IT IS SO ORDERED**.

21

22   Dated: November 20, 2015

23                                                          _____

24                                                          RICHARD SEEBORG
                                                            United States District Judge
25

26

27

28

United States District Court
Northern District of California